# Rickner PLLC

Stephanie Panousieris | stephanie@ricknerpllc.com

April 14, 2025

**MEMO ENDORSED**

**Via ECF**
Hon. Gary Stein, USMJ
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Ramos v. City of New York et al.*, 1:23-cv-02464-LAK-GS

Your Honor:

My office represents Plaintiff David Ramos in the above-referenced matter, and writes to respectfully request that the Court order the immediate disclosure of surveillance footage currently being withheld by Defendants, without justification, while a Rule 68 offer is pending.

## BACKGROUND

As Your Honor may recall, this case involves a use of force incident that unfolded in two parts. First, Plaintiff was forcibly removed to the dayroom, while on the phone with family, based on the unruliness of other detained persons. Second, Plaintiff was kept in the dayroom after all other persons in custody were escorted out before being sprayed directly in the face with mace and taken to the ground face first, ostensibly for failing to react quickly enough to commands.

Before the mediation in January, the City said that a significant portion of the surveillance footage requested by the Plaintiff in his May 17, 2024 discovery demands—video depicting the events directly preceding the use of force when Plaintiff was removed to the dayroom, and events after Plaintiff was left in a cell covered in mace—did not exist. Prior to the parties' settlement discussions, the City produced footage starting moments before Plaintiff was sprayed and taken to the ground, along with a handheld video of his escort. Plaintiff accepted the City's representation concerning the missing video and engaged in a good faith, but ultimately unsuccessful, mediation.

After the mediation, we struggled to reach the assigned ACC to schedule depositions. Eventually, we learned that the former ACC was out on leave, and ACC Thomas Lai appeared on behalf of Defendants in mid-March. No supplementary disclosures were made by the City between the January settlement conference and Mr. Lai's appearance. The parties conferred on March 25, 2025, during which Mr. Lai informed Plaintiff's counsel that the "missing" video footage was in his possession, and stated that he would produce it after Plaintiff signed a confidentiality order.

On April 3, the City emailed a curtesy copy of a Rule 68 offer of judgment, which was received by our office via mail on April 8. Upon receipt of the Rule 68 email, I immediately responded that Plaintiff could not adequately assess the offer or move forward with his April 10 deposition until the formerly "missing" video was disclosed. Despite our strong objection to the overboard content of the City's confidentiality stipulation, and the fact that video was already disclosed in this action

without any confidential designation, Plaintiff signed the City's proposed order to expedite the disclosure of the video in light of the Rule 68 and impending discovery end date. The signed confidentiality agreement was provided to Defendants' counsel on April 7, 2025.

After several follow ups insisting the video must be disclosed prior to Plaintiff's April 10 deposition, the City made a partial production *on* April 10. But it only produced portions of the video in its possession, and did not produce it in its native file format. Videos from Rikers Island are typically produced in native Genetec format, which allows each video to be synced and show multiple angles during the same time frame at once. The cameras are also motion sensitive, and in the native format, you can see where they stop and start recording. But the City altered the files from the original Genetec format and instead disclosed three separate MP4 clips, making it impossible to sync to see if the video has been edited. No privilege log was provided, and the format change makes it impossible for Plaintiff to determine what is still missing.

In the original video production served by the City in May of 2024, there are **18** different Genetec camera angles depicting various parts of EMTC on Rikers Island. Based on the internal time stamp on this footage, the first production covers the time between approximately 12:06 and 12:27, and begins just before the ESU officers' use of excessive force. The City also produced one hand-held video depicting Plaintiff's escort from a stairwell to a holding cell after the use of force. Neither the events preceding the use of force, nor depicting the removal of Plaintiff's spit mask by an uninvolved officer after he was left to languish in the holding cell without access to the decontamination process, was provided in the production.

In the new production, only 3 of the 18 camera angles have been produced, in an altered file format, which cannot be synced together. These three videos begin at approximately 11:40, and end at 12:19, extending the original production's time period by about 25 minutes. The production excludes all angles where Plaintiff is not directly in front of the camera, including the view inside the dayroom while Plaintiff is on the phone, which should show the incident (in which Plaintiff was not involved) that led to the ESU officers' entry into the dorm in the first place. Nor did the supplemental disclosure contain the footage of the cell area in which Plaintiff's spit mask was removed, or his transport to medical—all of which was requested almost one year ago—which he contends would further demonstrate his physical injuries and mistreatment by Rikers staff. The additional angles and timelines may depict officers' response time, indicate who was giving commands, show witnesses to the incident, or otherwise reveal admissible content.

In response to the April 10 production of edited surveillance footage, Plaintiff's counsel contacted the City demanding the reproduction of the surveillance footage from all angles in its original file format, just as the prior video disclosures were made. The City responded that it produced "the portion of the video and all angles that were relevant to Plaintiff's claims," and that it was "not inclined to produce anything further."

Before making this motion, Plaintiff sought and obtained the City's consent to extend the Rule 68 offer by 14 days to allow the parties to resolve any disputes over this video evidence before the offer expires. Plaintiff seeks Your Honor's intervention to expedite resolution of this issue while the offer of judgment is pending.

Rickner PLLC

**REQUEST FOR RELIEF**

We respectfully request that Your Honor order the immediate disclosure of **all** video footage covering any part of the incidents described in the Complaint in their original, native file Genetec format. Surveillance footage from Rikers is usually disclosed in its original format by the City, both through FOIL and in litigation, and the City's unilateral decision to pick and choose what they deem relevant and reformat the video they did produce is improper. Indeed, the City previously produced video in Genetec format, without a confidentiality order, in this case.

There is no justification for the City's withholding of this video, and there is no burden in producing it. It is easier to produce the native files than to spend time picking out parts of the video and converting them to another format. The City's claim that the withheld video is irrelevant, based on their unilateral judgment, is not persuasive. Plaintiff's counsel may see things that are relevant and even admissible in the other camera angles, like the response times of officers, faces of other witnesses who have a view of the incident, and video showing Plaintiff's injuries as he is dragged away. All footage from all cameras in the area of the incident should be produced in native format.

It is also troubling that Plaintiffs and the Court engaged in mediation on the presumption that this video was destroyed, only to have the City discover and disclose its existence, and then immediately serve a Rule 68. This tactic again presumes Plaintiff should resolve this matter without seeing all of the video. It should have been produced prior to mediation, not months later, with a Rule 68 offer hanging over Plaintiff's head.

If the Court requires more information to grant this request, Plaintiff respectfully requests a brief discovery conference, at Your Honor's earliest convenience, to further address the dispute.

Respectfully Submitted,

Stephanie Panousieris
*Attorney for Plaintiff*

The Court held a conference on the discovery dispute raised by the parties' letters at Dkt. Nos. 42 & 44. For the reasons stated on the record during the conference, the Court grants Plaintiff's application and directs Defendants to produce all preserved Genetec videos in native format, including the footage not previously produced and the footage previously produced in a format other than the native format. The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. No. 42.

SO ORDERED.

DATED: New York, New York
April 24, 2025

Gary Stein
United States Magistate Judge
Southern District of New York